194 N.J. Super. 547 (1984)
477 A.2d 423
CYNTHIA DAVIDSON, PLAINTIFF,
v.
JAMES DAVIDSON, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided February 7, 1984.
*549 Barry I. Croland for plaintiff (Stern, Steiger, Croland & Bornstein, attorneys).
Elinor P. Mulligan for defendant (Mulligan & Mulligan, attorneys).
KRAFTE, J.S.C.
Will a matrimonial oral property settlement and support agreement, entered into by attorneys for their respective clients with their specific knowledge, consent and authorization during a settlement conference in chambers, be formalized by order, in spite of the fact that one party thereafter attempts to repudiate same?
No reported case, whether in New Jersey or any other jurisdiction, has addressed this question. This court now does and answers in the affirmative.
The facts are relatively uncomplicated. On November 7, 1983, this matter was set down for trial before this court. The issues which were to be determined at the trial were defined in an unreported opinion of the Superior Court, Appellate Division, dated March 28, 1983. Prior to commencement of the trial, there were extensive settlement discussions in and out of chambers between plaintiff (present in court), her attorney, defendant's former attorney, defendant (by telephone), the court-appointed accountant and the court. It is not disputed that defendant's former attorney was acting on behalf of defendant and that he consulted with defendant on the telephone several times with respect to all aspects and particularly the proposed terms of the settlement which were being discussed. Defendant chose not to attend, but rather to be available by telephone, although fully aware that this was the trial date.
These negotiations resulted in a settlement of the case, the terms of which were agreed upon by plaintiff and, based upon representations made by defendant's former attorney after a number of telephone conversations with defendant, by defendant. *550 Defendant does not now dispute this. On November 11, 1983, plaintiff's attorney mailed to defendant's former attorney a consent order embodying the settlement.
On or about November 16, 1983, plaintiff's attorney's office received a telephone communication from defendant's former attorney stating, in effect, that defendant no longer wished to abide by the terms of the settlement and that defendant's attorney and his firm would have to withdraw as counsel. Defendant then retained his present counsel. Because consent order was never signed by defendant or his former attorney, plaintiff brought this order to show cause to specifically enforce the oral settlement entered into under the above circumstances.
The policy of the courts of the State of New Jersey is to encourage settlements. This policy in turn creates an affirmative obligation of counsel to attempt to settle cases. Nowhere is this policy more imperative than in the ever-burgeoning field of family law. There is no force more destructive to the sane resolution of the myriad and complex aspects of family dissolution than a trial whereby inter-personal relationships and all things flowing from them become polarized. There is no area of the law which brings such basic, emotional feelings to the fore. Where once love lived, hate now abounds. Myriad support and expert personnel are called upon, seeking a just and proper resolution to these seemingly impossible conflicts. With more divorces being granted now than in history, and with filings on the rise, fair, reasonable, equitable and, to the extent possible, conclusive settlements must be reached, or the inexorable and inordinate passage of time from initiation of suit to final trial will be absolutely devastating to the parties and their children in particular, and to society in general which must ultimately bear the burdens, both financially and sociologically.
Based upon these principles and concepts, this remand was settled after an extensive amount of time expended and effort exerted by the parties, the attorneys, the accountant and the *551 court. On the morning of November 7, 1983, plaintiff and defendant compromised their positions, and approved, and were prepared to live by, their agreement. Both agreed that it was a fair compromise though, as with all compromises, neither party was elated. In addition to the full approval by the parties, the court, based upon its intimate knowledge of the totality of the facts (having been the original trial judge), and the terms and conditions of the settlement, specifically approved the settlement as being fair, reasonable and equitable to all concerned, and advised both attorneys of its position.
It is unquestionable that matrimonial settlement agreements, whether in writing or oral, having been entered upon the record with the consent of both parties, are initially binding.
Accordingly, we approach the spousal agreement with a predisposition in favor of the validity and enforceability. [Petersen v. Petersen, 85 N.J. 638, 642 (1981)]
It is further clear that stipulations, as opposed to final, complete spousal agreements, fall into the same favored position.
We cannot overlook the importance of stipulations between litigants and the promotion of expeditious and complete justice by their enforcement provided no harsh or unfair contract results....
Since stipulations in court made by attorneys when acting within the scope of their authority are enforceable against their clients, certainly, stipulations by attorneys and their clients before the court and in the record must, a fortiori, be enforceable. [Carlsen v. Carlsen, 49 N.J. Super. 130, 136-137 (App.Div. 1958)]
As stated above, research has provided no reported matrimonial decision in New Jersey or elsewhere as to whether such an agreement should be formalized in a matrimonial court where one party, prior to formalization, repudiates it.[1] However, the general concept has been historically and unqualifiedly accepted in the civil courts of New Jersey. As early as 1888, in Phillips v. Pullen, 50 N.J.L. 439 (E. & A. 1888), a defendant, who gave his attorney general instructions to negotiate a settlement in a *552 tort action, was bound by the agreement made by his attorney on his behalf where the defendant, after learning of the lowest sum plaintiff would accept, instructed the attorney to settle on the best terms he could obtain.
In Bernstein & Loubet, Inc. v. Minkin, 118 N.J.L. 203 (E. & A. 1937), the highest court stated:
But it is the clear policy of our courts to recognize acts by attorneys of the court as valid and presumptively authorized and, unless the contrary appears, it will be presumed that a stipulation was duly authorized. [at 205]
In Honeywell v. Bubb, 130 N.J. Super. 130 (App.Div. 1974), a stipulation of settlement was placed on the record. Defendant-husband was present in court throughout the proceedings while his wife, the co-defendant, was not. The record indicates that the defendant-wife was, however, in telephone communication with her attorney at all critical times. The defendant-husband acknowledged his understanding and acceptance of the settlement on the record, and defendant-wife's attorney so acknowledged for her. After plaintiff's counsel prepared the agreement, he was informed of defendant's refusal to sign it or abide by its terms. Proceedings to enforce the settlement followed. The court stated:
[E]mbedded in our jurisprudence is the principle that the settlement of litigation ranks high in our public policy.... Thus, barring fraud or other compelling circumstances, our courts strongly favor the policy that the settlement of litigation be attained and agreements thereby reached, be honored. [at 135-136]
Defendant places great stress on the fact that the oral agreement was never formalized "on the record." However, defendant was continuously informed by his attorney by telephone during all stages of the negotiations. This court reiterates that defendant voluntarily absented himself from the court house, thereby effectively precluding the formality of an "on the record" statement.
This precise issue was recently addressed in Pascarella v. Bruck, 190 N.J. Super. 118 (App.Div. 1983), a medical malpractice case, where the court reversed and remanded an order setting aside a settlement. This case was settled outside *553 of the courtroom and the agreement was not put on the record. Defendant's counsel prepared the appropriate papers which plaintiff's attorney received two days later. In the interim, plaintiffs returned to their home and had a change of mind. The Appellate Division found that the oral settlement agreement was a binding contract and was entered into between competent adults. There is no legal requirement that there be court approval in such a case. DeCaro v. DeCaro, 13 N.J. 36, 43 (1953). The practice of spreading the terms of the agreement upon the record, although a familiar practice, was found not to be a procedural requisite to validity and/or enforcement. The court in Pascarella, supra, cited Green v. John H. Lewis & Co., 436 F.2d 389 (3 Cir.1971), which held that:
An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court or even in the presence of a writing. [at 390]
Accord Good v. Pennsylvania R.R., 384 F.2d 989, 990 (3 Cir.1967); Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 802-803 (3 Cir.1962), cert. den. 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962). The Court in Pascarella went on to say that:
We adopt these principles as consistent with the announced public policy of the jurisdiction favoring settlement of litigation. Settlements of this nature are entered into daily in our court house corridors and conference rooms, the court only aware, until informed of the fact of settlement, that counsel and the parties are working toward that desirable end. Adoption of a principle that such agreements are subject to attack because they were not placed upon the record placed in unnecessary jeopardy the very concept of settlement and the process by which settlement of litigation is ordinarily achieved. [190 N.J. Super. at 124]
This court concludes that there is no reason why there should be a difference in a matrimonial case as opposed to a non-matrimonial case, between a settlement that is placed "on the record" or when both parties, through their authorized attorneys, agree to the terms of the settlement. The above cited cases readily show that no such difference exists in a non-matrimonial case.
*554 The authority of the matrimonial attorney in settling a matrimonial case can be no less than that of a civil attorney in a civil case. Under the circumstances of this case, both attorneys had the authority to, and did, bind their clients. This court finds that the property settlement and support agreement is a binding contract. Judgment will be entered accordingly.
NOTES
[1] This would constitute the first necessary step toward enforcement, if fair and equitable. Smith v. Smith, 72 N.J. 350 (1977).