## William VIOLETTE

v.

## INTERNATIONAL BUSINESS MACHINES CORP.

No. 1:96CV49.

United States District Court, D. Vermont.

July 24, 1996.

RULING ON MOTION TO DISMISS
(paper 22)

MURTHA, Chief Judge.

Plaintiff William Violette has filed a Title VII employment discrimination claim (paper 20) against Defendant International Business Machines Corp. (IBM), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA) and the Vermont Fair Employment Practices Act, 21

V.S.A. § 495 *et seq.* (FEPA). In response, Defendant has filed a motion to dismiss (paper 22). For the reasons set forth below, Defendant's Motion to Dismiss (paper 22) is GRANTED.

## I. Background

Solely for the purpose of deciding the instant motion, the Court finds the following. Plaintiff was a permanent employee of Defendant from May 14, 1984 until October 12, 1995. On October 8, 1986 and May 14, 1987, IBM warned Plaintiff, both verbally and in writing, of a sexual harassment complaint made against him by a fellow employee. During the second warning, Plaintiff informed Defendant he was suffering from dysthymia (depression) and he was trying to control this disability with medication and psychiatric treatment. On May 19, 1987, Plaintiff provided IBM's doctor with a lengthy description of his disability and treatment. Plaintiff informed Defendant that the two warnings aggravated his condition. Throughout the period from the summer of 1987 until January 1990, Plaintiff's disability caused him to frequently be absent from work. During this period, Plaintiff was generally restricted to an eight-hour work day.

In January 1990, Plaintiff's treating physician and treating psychotherapist surmised that it was the October 1986 and May 1987 'warnings that aggravated Plaintiff's depression and anxiety, such warnings being psychosocial stressors. On January 23, 1990, Plaintiff had an interim review where he was told he could be terminated if he did not improve utilization of his time, productivity, and distraction to other employees. That night, Plaintiff contemplated suicide but, instead, drove himself to the hospital. Plaintiff did not return to work until March 12, 1990. Upon return to work, Plaintiff was restricted to a four-hour shift, which was then increased to an eight-hour shift.

At the end of April 1992, Plaintiff was transferred to a new position, where his shift continued to be restricted to eight,hours. The majority of the other employees in the department worked twelve-hour shifts. Plaintiff continued his restricted eight-hour shift to deal with his disability. Both Plaintiff and Plaintiff's doctors continued to communicate with IBM's medical department to ensure the shift restriction was not lifted.

In early 1994, Plaintiff's department changed to "Self Directed Team Work." Plaintiff was one of three employees that had an eight-hour shift. The other twenty-plus department employees worked twelve-hour shifts. In September 1994, the department responded to a survey regarding employee preference on the length of work shifts with the result being everyone on Plaintiff's team—except Plaintiff—preferred the twelve-hour shift. Despite his veto power, and knowing of Plaintiff's disability, Plaintiff's manager did not override the vote. From September 19, 1994, when the results of the survey were made known, until September 22, 1994, Plaintiff alleges there was virtual silence within his team. Thus, on September 22, 1995, during a meal break from work, Plaintiff attempted to commit suicide by slitting his wrist and taking a medication overdose.

Upon return to work, Plaintiff was transferred to another department. Plaintiff alleges the emotional stress from work made it impossible for him to function in the work place. On January 12, 1995, upon the insistence of his psychiatrist, Plaintiff permanently stopped working at Defendant's facility. On October 12, 1995, Plaintiff became officially inactive. Plaintiff receives Social Security Disability benefits and, according to Plaintiff, remains unable to pursue any type of employment.

Plaintiff contends he was a qualified person with a disability capable of performing the essential elements of his job, with or without accommodations made by Defendant. As such, Plaintiff contends that Defendant's actions violated his rights under the ADA and Vermont's FEPA. Defendant moves to have the complaint dismissed as failing to state a claim.

## II. Discussion

### A. ADA Claim

In an Americans with Disability Act suit, the plaintiff bears the initial burden of alleging a prima facie case. *See Heilweil*

*v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994). To do so, the plaintiff needs to allege he is a "qualified individual with a disability" under 42 U.S.C. § 12112(a). *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 554 (D.Kan.1995). A "qualified individual" is "an individual with a disability who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." (Emphasis added.) 42 U.S.C. § 12111(8). "If the court concluded that the Plaintiff is not a qualified handicapped individual, there is no actionable claim." *State of Vermont v. G.S. Blodgett Company,* 163 Vt. 175, ——, 656 A.2d 984, 991 (1995). It is the court that makes "the ultimate determination whether the Plaintiff is a qualified handicapped individual." *Id., citing Doe,* 666 F.2d at 776.

Here, Plaintiff is not a "qualified individual" because he cannot perform the essential functions of the position which he held. According to his amended complaint (paper 20 at ¶ 115), Plaintiff stopped working because "the emotional stress from the employment made plaintiff's job *impossible to perform,* and made it *impossible to function* in the work place." (Emphasis added.) Inability to perform or work is in direct conflict with the definition of "qualified individual." As opposed to statutory requirement, Plaintiff cannot perform *any* function of his job. The plain language of the ADA clearly indicated the ADA was designed to afford relief only to those individuals with disabilities who *can perform* the essential functions of the job that they hold or seek. *See Parker v. Metropolitan Life Ins.,* 875 F.Supp. 1321, 1326 (W.D.Tenn.1995). Because Plaintiff cannot perform the essential functions of the job he held, he is not entitled to the relief provided for "qualified individuals" under the ADA.

Further, Plaintiff is not a "qualified individual," because, "[h]e was and remains no longer able to pursue any type of employment, and receives Social Security Disability Insurance benefits." Paper 20 at ¶ 116. Receipt of such benefits is evidence of an inability to work. *See Garcia–Paz,* 873 F.Supp. at 555. To receive Social Security Disability Insurance benefits, one must be found dis-abled. *Id.* A finding of such a disability estops a plaintiff from claiming he is a "qualified individual." *Id.* In essence, Plaintiff admits in his amended complaint that he is not a "qualified individual" because he is receiving Social Security Disability Insurance benefits. *See August v. Offices Unlimited, Inc.,* 981 F.2d 576, 584 (1st Cir.1992) (where plaintiff concedes he was totally disabled for disability benefits, he cannot establish he was a "qualified handicapped person" and, thus, cannot make a prima facie case). Therefore, not being a "qualified individual," Plaintiff cannot make a prima facie showing for a claim under the ADA. Plaintiff, therefore, is not entitled to relief under the ADA and his complaint should be dismissed for failure to state a claim. Fed.R.Civ.P. 12(b)(6).

### B. FEPA Claim

Plaintiff also complains that Defendant's actions violated his rights under Vermont's Fair Employment Practices Act, Title 21, V.S.A. § 495. See Paper 20 at 17. "The Vermont statute [FEPA] is patterned on Title VII, and the legal analysis to be followed derives from *McDonnell Douglas Corporation v. Green,* [411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]." *Cobb v. Dufresne–Henry, Inc.,* 603 F.Supp. 1048, 1053 (D.Vt. 1985). "The standards and burdens of proof under state law are identical to those existing under federal law." *Id. See also Mancini v. General Electric Company,* 820 F.Supp. 141, 146 (D.Vt.1993). Thus, since Plaintiff has not alleged a prima facie case under the federal statute (ADA) for discrimination, he also fails to allege a prima facie case under Vermont's comparative FEPA. Plaintiff's FEPA claim must also be dismissed.

### C. Common Law Claim

Finally, Plaintiff claims that "with knowledge of plaintiff's disabilities, defendant has continuously created a hostile work environment for plaintiff, and is liable to the plaintiff therefore." Paper 20 at 17. Plaintiff argues this common law theory is in the alternative to his ADA and FEPA claims. However, because discrimination claims are unknown at common law and are solely statutory creations, Plaintiff's claim is preempted

**450**

by the statutes. *See Winney v. Ransom & Hastings, Inc.*, 542 A.2d 269, 270, 149 Vt. 213, 214 (1988) ("Where a statute confers a remedy unknown to common law, and prescribes the mode of enforcing it, that mode alone can be resorted to."). Thus, Plaintiff has failed to set forth a common law claim.

### III. Conclusion

The Defendant's motion to dismiss (paper 22) Plaintiff's amended complaint (paper 20) is GRANTED.

SO ORDERED.