762 A.2d 297 (2000)
335 N.J. Super. 304
Karen E. RAMER, Plaintiff-Appellant,
v.
NEW JERSEY TRANSIT BUS OPERATIONS, INC., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2000.
Decided December 5, 2000.
*298 William B. Hildebrand, Cherry Hill, argued the cause for appellant (Feldman & Hildebrand, attorneys; Mr. Hildebrand, on the brief).
David S. Griffiths, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Mr. Griffiths, on the brief).
Before Judges CONLEY, WECKER and LESEMANN.
The opinion of the court was delivered by CONLEY, J.A.D.
Plaintiff, a bus driver for defendant New Jersey Transit (N.J. Transit) who was terminated in September 1995 because of some physical injuries, filed a New Jersey Law Against Discrimination (LAD) complaint in August 1997 arising from her termination and alleging that at the time of her termination she was fully able to perform her job. However, from September 1995 to April 1997, loan payments on plaintiff's personal vehicle were paid through a private "credit disability insurance" policy based upon claim forms filed by plaintiff with the insurer which contained affirmations of total disability.
In its motion for summary judgment in the LAD complaint, N.J. Transit claimed that these prior affirmations were irreconcilably contrary to plaintiff's LAD contentions. Specifically, plaintiff had asserted in her LAD complaint that "[a]t the time of the [September 1995] termination ... [p]laintiff was fully capable of performing the duties and functions of a bus operator." N.J. Transit asserted before the motion judge, relying predominantly upon McNemar v. The Disney Store, Inc., 91 F.3d 610 (3d Cir.1996), cert. denied, 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997), that the doctrine of judicial estoppel barred plaintiff's LAD complaint because the statements she made in connection with her private insurance claims were inconsistent with her LAD complaint in which she asserted, and must prove, that during the time of her termination she was able to perform the functions of her job. The motion judge agreed. We do not.
In setting forth the pertinent facts, we note that most are not disputed. To the extent there are disputes, the record must be viewed most favorably for plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). Plaintiff has worked for N.J. Transit as a bus operator since 1984. In 1986 she sustained a work-related injury to her back which necessitated surgery and temporary leave of absence for four months, after which time she returned to work. In July 1992, plaintiff injured her neck, shoulder, and arm while lifting a wheelchair for a disabled bus passenger. At that time, N.J. *299 Transit doctors diagnosed plaintiff with a sprained shoulder and recommended a six-month leave of absence. Plaintiff returned to work in February 1993. But in September 1994 she had additional back surgery and was on leave of absence until January 3, 1995, when she returned to work.
Plaintiff alleges that, upon her return to work, she did not experience any further problems with her neck or back except for "a little soreness." Nonetheless, in September 1995 plaintiff was examined by N.J. Transit's doctors. The reason for this medical examination is disputed. Plaintiff contends it was "in connection with her workers' compensation claim." N.J. Transit asserts the examination was in response to plaintiff's "occasional complaints of pain and discomfort in her neck." In any event, the doctors concluded that plaintiff "was over 50% disabled" and, pursuant to a N.J. Transit policy, would not be permitted to operate her bus. In this respect, N.J. Transit's medical records contain the following note:
Due to a high percentage of permanent disability, 30 percent for the lower back, at least 27 percent neck and questionable neuropathy, this patient will not be capable of returning to work as a bus operator at the present time. [Plaintiff has been] informed ... to consider additional sources of employment that are less strenuous work.
From September 1995 to January 1996, plaintiff was not permitted to work as a bus operator and was paid temporary workers' compensation benefits. In January 1996, plaintiff was informed by N.J. Transit that those benefits would be discontinued. She was told to bid on other jobs and if not successful she would be fired. Plaintiff claims she did bid on other jobs, but was unsuccessful and she was, therefore, fired "for being unavailable for work" in early 1996. Ultimately, pursuant to a grievance proceeding brought on her behalf by her union, plaintiff was reinstated and returned to work in October 1997.
In this LAD litigation, plaintiff contends that N.J. Transit has a company policy of prohibiting employees from operating a bus if their disability for worker's compensation purposes is greater than fifty percent and that that is violative of LAD. Deposition testimony of various N.J. Transit employees reveals that this policy existed and that it was enforced. Plaintiff also contends, and we accept in the context of this appeal, that she told the N.J. Transit doctor that she "was capable of doing [her job]."
The basis for N.J. Transit's motion for summary judgment, and the heart of this appeal, is the following. In September 1993, plaintiff signed a sales contract with PNC Bank as lender for the purchase of a vehicle and agreed to obtain credit disability insurance. The insurance policy covered payment of plaintiff's monthly vehicle payments upon disability. It provided in part:
A debtor is totally disabled if due to ... bodily injury, [she] is:
1. under the regular care and treatment of a legally qualified physician or surgeon other than [her]self; and
2. completely unable to perform any of [her] job duties.
Injury, as used in this Policy means accidental bodily injury occurring while the debtor's insurance under this Policy is in force....
On December 1, 1995, after the N.J. Transit medical staff told plaintiff she could not work as a bus operator because it thought she was more than fifty percent disabled, plaintiff submitted a claim under the credit disability insurance policy. On the initial claim form, the question was posed "[w]hy did you stop work?" Plaintiff answered "[the c]ompany Dr. said I was unable to drive [a] bus." This is true. From December 1995 to May 1997, all while plaintiff was not permitted to return to work and was, finally, terminated, and prior to her return in October 1997, plaintiff submitted "Continuing Reports of Disability" to the insurer, Federal Home *300 Life Insurance Company. In these reports, N.J. Transit's doctors asserted that plaintiff was "totally unable to perform the duties of [her] own occupation," but she was "able to perform the duties of another occupation." Plaintiff confirmed her status on these same reports, but sometimes stated she was able to perform duties of another occupation while other times stated she was not able to perform the duties of another occupation. From September 1995 to April 1997, plaintiff's monthly loan payment of $707.86 was paid by Federal, totaling $13,449.34.
The essence of N.J. Transit's position below was "Judicial Estoppel ... that doctrine which in order to insure judicial integrity prohibits a litigant from coming into court and maintaining a position contrary to one she maintained previously." Counsel argued:
For the court to permit the litigant to come in today and in effect, if not actual fact, just say I lied before when I [signed the credit disability notice of claim] saying I couldn't drive a bus would be the very offense that the Doctrine of Judicial Estoppel is intended to prevent.
The motion judge seemed to recognize that judicial estoppel was the basis of N.J. Transit's motion. He said "defense counsel has moved that ... Judicial Estoppel be applied to bar plaintiff from taking a position other than what was taken in [her] credit disability notice of claim." Continuing, he said:
I don't know that judicial estoppel is applicable mainly ... because ... the prior inconsistent or contrary statement was not made in a judicial setting, but in reading McNemar[v. The Disney Store, Inc., 91 F.3d 610 (3d Cir.1996), cert. denied, 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed. 2d 845 (1997)]....[McNemar says] that judicial estoppel really does not have to be in a judicial setting such as in a court of law....
Applying, then, McNemar v. The Disney Store, Inc., supra, 91 F.3d 610, the judge concluded:
estoppel would be applicable, and the main reason is that statements were even if we take plaintiff's position that she didn't make the statements, I don't think you can sit back and say, all right, [a doctor] said I was disabled. I never said I was disabled. But because [it's a doctor], I will sign that I am disabled.
See McNemar, supra, 91 F.3d at 617.
While the motion judge equivocated somewhat as to whether he was applying judicial estoppel or equitable estoppel, it is plain that N.J. Transit's motion was premised upon the former.[1] Moreover, the federal cases relied upon by N.J. Transit arise in the context of judicial estoppel.
It, then, being clear that the premise of N.J. Transit's motion was judicial estoppel, our recent decision in Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J.Super. 596, 760 A.2d 794 (App.Div. 2000), is dispositive. There we pointed out that the purpose of the doctrine was to protect "the integrity of the judicial process." Id. at 606, 760 A.2d 794 (quoting Cummings v. Bahr, 295 N.J.Super. 374, 387, 685 A.2d 60 (App.Div.1996)). Thus:
[a] threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding. Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 620, 581 A.2d 91 (App.Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991); Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442, 446, 30 *301 A.2d 290 (Sup.Ct.), aff'd, 130 N.J.L. 487, 33 A.2d 813 (E. & A.1943); Bell Atl. Network Servs., Inc. v. P.M. Video Corp., 322 N.J.Super. 74, 95, 730 A.2d 406 (App.Div.), certif. denied, 162 N.J. 130, 741 A.2d 98 (1999).
[Id. at 606, 760 A.2d 794 (emphasis added) (footnote omitted).]
The "same or prior proceeding" means a prior judicial proceeding. Judicial estoppel only arises where a party in a prior court proceeding "convinced the court to accept [a] position" it seeks to disavow in a subsequent judicial proceeding.[2] As we explained in Kimball, "`[t]he principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events.'" Id. at 607, 760 A.2d 794 (quoting Eagle Found., Inc. v. Dole, 813 F.2d 798, 810 (7th Cir.1987)). We, therefore, said:
Consequently, "[a]bsent judicial acceptance of the inconsistent position, application of [judicial estoppel] is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected; the perception that either the first or second court was misled is not present." Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir.1982); see also In re Coastal Plains, Inc., 179 F.3d 197, 206-07 (5th Cir.1999), cert. denied, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000); Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540, 1547-48 (7th Cir.1990); see generally, Boyers, supra, 80 Nw. U.L.Rev. at 1255-58.

[Id. at 607, 760 A.2d 794.]
We further made clear that application of judicial estoppel requires not only the existence of an inconsistent position in a prior court proceeding, but the acceptance of that position by the court. Id. at 607-08, 760 A.2d 794. And see id. at 607 n. 2, 760 A.2d 794 (overruling Levin v. Robinson, Wayne & LaSala, 246 N.J.Super. 167, 189-90, 586 A.2d 1348 (Law Div.1990), which had held that judicial estoppel did not require successful assertion of the prior inconsistent position).
Here, plaintiff's statements in her insurance claim forms, while successful in that she received the insurance benefits, were not made in a judicial or even quasi-judicial context and were not accepted by a court. For that reason alone, the doctrine does not apply.
Further, as we said in Kimball, judicial estoppel is an "extraordinary remedy" and should be invoked "only `when a party's inconsistent behavior will otherwise result in a miscarriage of justice,' " id. at 608, 760 A.2d 794 (citation omitted), and only "in those circumstances required to serve its stated purpose, which is to protect the integrity of the judicial process." Id. at 608, 760 A.2d 794 (footnote omitted). Plaintiff's LAD allegations that she was able to perform her job when she was fired and her asserted inconsistent statements in her insurance claim forms do not threaten the integrity of the judicial process anymore or less than any other litigant who makes statements in court that are inconsistent with prior statements.
Moreover, it is not at all clear to us that plaintiff's assertions of disability in connection *302 with her insurance claim are so contradictory to her LAD assertion of being able to perform the job to, as a matter of law, warrant a striking of her complaint. As we have said, plaintiff asserted in her insurance claim forms that she was totally disabled because N.J. Transit's doctors' determined that she could not work based upon the fifty percent policy. While N.J. Transit may now dispute the reason for the doctors' conclusion the plaintiff could not perform as a bus operator, it certainly is true that the policy did exist. But does the conclusion that plaintiff was disabled based upon that policy necessarily mean that she, in fact, could not have performed the functions of her job?
The observations in Fredenburg v. Contra Costa Dep't of Health Servs., 172 F. 3d 1176 (9th Cir.1999), illustrate this point. There, plaintiff filed suit under the Americans with Disability Act (ADA) contending that her employer unlawfully discriminated against her by removing her from work. The federal district court granted the employer's motion for summary judgment, concluding that plaintiff's prior application for and receipt of disability benefits judicially estopped her from establishing her discrimination claim. On appeal, the United States Court of Appeals for the Ninth Circuit concluded that the district court erred in applying the doctrine. In this regard, the Court stated:

[Plaintiff] was not playing fast and loose with, or committing fraud on, the court. Her case illustrates the problems faced by a worker in her position. Her employer concluded that she could not perform her job, and placed her on unpaid leave. She disagreed with her employer's determination and unsuccessfully challenged it. Then, without pay because of her asserted disability, she applied for temporary disability benefits and received them. What else was she to do? When those benefits were terminated because the state decided she was no longer disabled, she disagreed but was unsuccessful in challenging that determination. She then asked her employer to take her back, and the employer refused. So she brought suit under the ADA, claiming that she was able to perform her job. It is true that [plaintiff] took inconsistent positions during this saga, but her employer and the state, considered together, were not treating her consistently either. She has not denied any of the representations she made; the court has not been misled. [The] requisites for judicial estoppel are simply not met.
[Id. at 1179-80 (emphasis added) (footnote omitted).]
The Court emphasized that this does not mean that plaintiff's prior assertions are irrelevant. Rather,
[Plaintiff's] earlier admissions, like those of any litigant, may be used in evidence against her. The trier of fact can take them into account in arriving at a decision. This ordinary process of decision making will be allowed to work in [plaintiff's] case. The only effect of our ruling is to avoid closing the courthouse door to [plaintiff] at the outset, because of her admissions.

[Id. at 1180-81 n. 6.]
And see Norris v. Sysco Corp., 191 F. 3d 1043 (9th Cir.1999), cert. denied, sub nom. Sysco Food Servs. of San Francisco v. Norris, ___ U.S. ___, 120 S.Ct. 1221, 145 L.Ed.2d 1121 (2000).
Our reference to Fredenburg brings us to the federal cases which have evolved from the application of judicial estoppel in the context of federal discrimination suits brought under the ADA where the plaintiff has previously received disability or other similar benefits. We need not, of course, address these cases as they are premised upon the apparent acceptance in the federal courts of judicial estoppel arising from prior inconsistent statements or positions taken in other than a judicial proceeding. As we have said, we do not adhere to that view in this State. But since the motion judge granted summary judgment premised *303 upon an application of the federal cases, we will address the federal law.
At the time N.J. Transit filed its motion, the federal law as to the use of judicial estoppel in similar circumstances was diverse. Some courts had adopted a per se rule of judicial estoppel. See Miller v. U.S. Bancorp, 926 F.Supp. 994, 999-1000 (D.Or.1996), aff'd, 139 F.3d 906 (9th Cir. 1998) (precluding ADA and equivalent state law claim because plaintiff's assertion that she can work was totally inconsistent with her application for total disability benefits); Violette v. International Bus. Machs. Corp., 962 F.Supp. 446 (D.Vt.1996), aff'd, 116 F.3d 466 (2d Cir.1997) (disability for social security purposes estops plaintiff from claiming he is a "qualified individual" under the ADA). Other federal courts adopted a rebuttable presumption approach. See Weigel v. Target Stores, 122 F.3d 461, 467-68 (7th Cir.1997) (plaintiff can come forward with evidence that she could perform essential functions of job with or without reasonable accommodations); Robinson v. Neodata Servs., Inc., 94 F.3d 499, 502 n. 2 (8th Cir.1996) ("Social Security determinations, however, are not synonymous with a determination of whether a plaintiff is a `qualified person' for purposes of the ADA."). Yet other courts had entirely rejected judicial estoppel as a bar to ADA and equivalent state actions. See Fredenburg v. Contra Costa County Dep't of Health Servs., supra, 172 F.3d at 1179; Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1220 (11th Cir.1997) (holding the district court abused its discretion in applying per se rule of judicial estoppel); Swanks v. Washington Metro. Area Transit Auth., 116 F.3d 582, 584-87 (D.C.Cir.1997) (finding that the receipt of SSDI does not stand as an absolute bar to ADA claims); D'Aprile v. Fleet Servs. Corp., 92 F.3d 1, 5 (1st Cir.1996) (plaintiff was not estopped from asserting employment discrimination claim under Rhode Island law because there was no broad assertion of incapacity).
After the summary judgment motion was granted in the instant case, Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), was decided. In Cleveland, the Supreme Court of the United States considered the contention that the plaintiff's statements of disability in her application for Social Security Disability Insurance benefits judicially estopped her from bringing a claim under the ADA in which she stated she could perform the functions of her job. Analyzing the Social Security Act, the ADA and the purposes served by those acts, the Court concluded that the two claims of plaintiff, though seemingly divergent, did not inherently conflict to the point where the doctrine of judicial estoppel automatically barred the ADA claim or to where the courts should apply a special negative presumption to the claim. Id. at 802, 119 S.Ct. at 1601-02, 143 L.Ed.2d at 974. For example, whereas the Social Security Act did not take into account the possibility of reasonable accommodation, the ADA did. Also, a person might qualify for disability benefits under the Social Security Act's administrative rules and yet remain capable of performing the essential functions of her job. Id. at 803-04, 119 S.Ct. at 1602-03, 143 L.Ed.2d at 975-76. Or, the nature of the disability might change so that a statement made when the disability benefits were applied for might not reflect an individual's ability at the time of the relevant employment decision. Id. at 805, 119 S.Ct. at 1603, 143 L.Ed.2d at 976.
Cleveland's resolution of the prior split in federal authority has been described as, "nothing more than an application of normal summary judgment procedures when conflicting affidavits are present in a case." Motley v. New Jersey State Police, 196 F.3d 160, 168 (3d Cir.1999) (Rendell, C.J., dissenting), cert. denied, ___ U.S. ___, 120 S.Ct. 1719, 146 L.Ed.2d 641 (2000). See Norris v. Sysco Corp., supra, 191 F.3d at 1049. In this respect, and at least in the context of *304 federal litigation, "[s]ummary judgment for a defendant is appropriate when the plaintiff `fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" Cleveland, supra, 526 U.S. at 805-06, 119 S.Ct. at 1603, 143 L.Ed.2d at 976 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[A]n ADA plaintiff cannot simply ignore the apparent contradiction that arises out of an earlier SSDI total disability claim. Rather, she must proffer sufficient explanation." Ibid. "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless `perform the essential functions' of her job, with or without `reasonable accommodation.'" Id. at 807, 119 S.Ct. at 1604, 143 L.Ed.2d at 977. In so determining we, of course, must recognize that "proof that a party ... has made prior inconsistent statements is not a rare event in our courts. Juries are regularly called upon to consider evidence of that sort, and we all know that prior inconsistency does not inexorably lead to defeat." Norris v. Sysco Corp., supra, 191 F.3d at 1049.
Applying the Cleveland test, some federal courts have continued to apply judicial estoppel to bar ADA litigation where the plaintiff cannot provide a satisfactory explanation for a prior inconsistent statement or position taken in a nonjudicial disability setting. In Lincoln v. Momentum Sys. Ltd., 86 F.Supp.2d 421 (D.N.J. 2000), for instance, plaintiff's explanation that he did not see the application for total disability benefits made to a private insurer because his doctor sent the necessary forms was not sufficient evidence to defeat summary judgment against plaintiff's ADA claim. Id. at 428-29. Critical too, was the fact that plaintiff continued to receive disability benefits even after his physician told him he could return to work. Id. at 430. See also Motley, supra, 196 F.3d at 160, 166 (affirming summary judgment for defendant employer because plaintiff failed to adequately reconcile prior inconsistent positions, supported by employer's medical board evaluation, with current claims under both the ADA and the NJLAD, noting: "[i]t is difficult to get around the conclusion that, in at least one of the fora, [plaintiff] was not completely honest."). But see Trowbridge v. Scranton Artificial Limb Co., 560 Pa. 640, 647, 747 A.2d 862, 866 (2000) (reversing trial court's application of judicial estoppel of plaintiff's claims under the Pennsylvania Human Relations Act and remanding to allow plaintiff to give "sufficient explanation" of any inconsistencies); Norris v. Sysco Corp., supra, 191 F.3d at 1049 ("We are not insouciant about Allied's claim that it seems somewhat unfair to have it first pay benefits to [plaintiff] through its insurer on the theory that she was disabled from working, and then to be forced to pay damages because, for ADA purposes, she was not so disabled that she was unable to work with accommodation. Perhaps the result here partly reflects some lack in Allied's presentation of its theories and evidence to the jury at a time when disability doctrinal development is in its infancy. Perhaps it partly reflects the jury's understanding about the problems and dilemmas faced by injured workers as they confront myriad of forms, demands, concepts and needs.... At any rate, we are not able to say that the district court erred when ... it decided that assessment of [plaintiff's] disparate positions should be consigned to the guided common sense of the jury rather than to the conscience of the bench.").
Although, as we have previously said, we need not tarry with Cleveland and its progeny as judicial estoppel is not applicable to plaintiff's statements made in the context of her private insurance claim forms, we are convinced that plaintiff's explanation for her statements in those forms and her receipt of benefits thereunder is more than sufficient to withstand *305 summary judgment. That is to say, assuming the truth of the earlier statements that plaintiff was disabled for the purposes of her credit disability insurance, a reasonable juror could, nonetheless, conclude that plaintiff could "`perform the essential functions' of her job, with or without `reasonable accommodation.'" Cleveland, supra, 526 U.S. at 807, 119 S.Ct. at 1604, 143 L.Ed.2d at 977.
Plaintiff's statements of disability on the insurance forms were no more than that she was totally disabled from performing her job based upon the N.J. Transit doctors' determination that she was so disabled. This was true. But the total disability determination of the doctors' was, at least according to her, based upon the fifty-percent disabled policy. A claim for insurance benefits based upon that disability assessment is not irreconcilably inconsistent with plaintiff's LAD claim that at the time she was fired she could perform her job, if even with reasonable accommodations. It is for a jury to consider whether plaintiff's prior statements of disability in connection with her insurance claim and whatever may be her trial testimony as to her ability to perform the functions of a bus operator during that same time period are inconsistent and, if so, what weight to give to that inconsistency. We do not believe that, as a matter of law, the insurance claim statements warrant a bar to plaintiff's LAD complaint.
Reversed and remanded.
NOTES
[1] Indeed, it could not assert equitable estoppel as plaintiff's application for payment of her car loan had no prejudicial impact upon N.J. Transit and it certainly did not rely upon anything she did in connection therewith. Successful application of equitable estoppel as a preclusive bar requires proof of reliance and prejudice. E.g. Heuer v. Heuer, 152 N.J. 226, 237, 704 A.2d 913 (1998).
[2] The doctrine may also be applicable where the inconsistent statement or position has been taken and accepted in a prior quasi-judicial proceeding. See State v. Gonzalez, 142 N.J. 618, 632, 667 A.2d 684 (1995) ("[j]udicial estoppel protects the integrity of both the judicial process and the casino industry when the Commission acts in its quasi-judicial capacity."); Ensslin v. Board of Trs., Police & Firemen's Ret. Sys., 311 N.J.Super. 333, 336, 709 A.2d 1344 (App.Div. 1998) (judicial estoppel would apply to inconsistent positions taken in LAD civil actions and administrative pension proceeding, excusing petitioner's failure to timely file pension application); S & D Envt'l Servs. Inc. v. Rosenberg Rich Baker Berman & Co., 334 N.J.Super. 305, 314, 759 A.2d 360 (Law Div.1999) ("[t]he doctrine [of judicial estoppel] may be applied where, as here, a party to a judicial proceeding asserts a position that contradicts a position previously taken in [an IRS] proceeding.").