828 A.2d 957 (2003)
362 N.J. Super. 479
Virginia B. PUDER, Plaintiff-Respondent,
v.
Kathleen BUECHEL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 2002.
Decided August 5, 2003.
*958 H. Jonathan Rubinstein, Millburn, argued the cause for appellant (The Feinsilver Law Group, attorneys; David Feinsilver and Mr. Rubinstein, on the brief).
Robert J. Reilly, III, New Providence, argued the cause for respondent (Fitzpatrick, Reilly, Supple & Gaul, and Puder & Poltrock, attorneys; Mr. Reilly, on the brief).
Before Judges KESTIN, EICHEN and FALL.
The opinion of the court was delivered by *959 KESTIN, P.J.A.D.
In this Law Division action involving a complaint for legal fees and costs and a counterclaim for malpractice, defendant appeals from the trial court's orders granting plaintiff's summary judgment motion for dismissal of the malpractice counterclaim and denying reconsideration. We reverse and remand.
This litigation grows out of a divorce proceeding between defendant and her former husband. Plaintiff was defendant's initial attorney in the matrimonial action, beginning in 1994.
In July 1996, plaintiff negotiated a settlement of the matrimonial matter despite only limited discovery of the husband's assets. Plaintiff recommended that defendant enter into the agreement. According to defendant, she evinced her acceptance of "some but not all of the terms," and plaintiff notified the court that the matter was settled. When the putative settlement was reduced to writing, defendant consulted with another lawyer, who advised her that the terms were unfavorable. Defendant then refused to participate in formalizing the settlement agreement. By September 1996, she had discharged plaintiff and had retained new counsel in the divorce litigation.
The husband moved to enforce the settlement, and a lengthy period followed while the parties prepared for a plenary hearing addressing the enforceability of the terms. During that period, plaintiff filed this action against defendant to collect unpaid legal fees, and defendant responded with her counterclaim for legal malpractice. The gravamen of the malpractice claim was that plaintiff had negligently advised defendant to enter into the settlement without first conducting adequate discovery regarding marital assets and "without properly informing [defendant] of the shortcomings of this proposed settlement and obtaining from [defendant] complete authority to enter into it." On defendant's motion, the fee dispute/legal malpractice action was stayed pending resolution of the divorce litigation. In making that motion, counsel had represented that his adversaries consented to the stay.
In 1998, during a plenary hearing in the Family Part on the settlement enforcement motion, defendant agreed to settle the divorce litigation for slightly more than she would have obtained under the earlier purported settlement. Defendant maintained that she did so because her new counsel informed her that the matrimonial judge had intimated to counsel that he was inclined to uphold the prior settlement as binding.
Thereafter, in this action, the Law Division granted plaintiff's motion for summary judgment on defendant's counterclaim, on the basis that defendant was precluded from pursuing her malpractice claim because she had entered into the second settlement in the divorce action. The Law Division judge also ruled that defendant was judicially estopped from maintaining her legal malpractice claim because, in seeking and obtaining the stay of trial on the fee dispute and malpractice claims pending resolution of the matrimonial matter, defendant's malpractice counsel had certified that the malpractice action "will be" rendered "moot" if defendant were to prevail on her husband's motion to enforce the first settlement. Defendant challenges these rulings on appeal after plaintiff's claim for fees and costs was settled and the matter concluded by a final order entered in the Law Division.
The 1998 Family Part hearing on the settlement enforcement application had progressed for six days when defendant was to begin the presentation of her proofs in opposition. At that juncture, the matrimonial *960 parties, on the record, entered into the second settlement. Under the earlier terms, inter alia, defendant was to receive $100,000 annually in alimony for five years, equitable distribution of $1.5 million in cash, $100,000 from the husband's profitsharing plan, and the marital home; she had waived any claim for amounts attributable to the husband's patents and business interests, as well as other property he owned, which, she contended, were worth many millions in the aggregate; and provision was made for support of the parties' children and their college expenses. The second settlement's new terms provided that defendant would receive an additional $100,000 IRA distribution and an additional $8,000 per year in alimony for the five-year term, with all of the alimony taxable to the former husband rather than to defendant.
Our review of the record discloses that the Law Division judge erred in dismissing defendant's counterclaim on the ground that defendant's legal malpractice claim was precluded because defendant had entered into the second settlement ending the divorce litigation. The flaws were in the judge's determination that defendant had an obligation to await the matrimonial judge's decision on the settlement enforcement application, as well as in the judge's reasoning that defendant's voluntary entry into the second settlement precluded a malpractice claim because to permit such a claim after the settlement would contravene "the spirit and the intent of what the professional malpractice [action] is all about."
The Law Division judge cited no authority in support of these rulings and we are unable to locate any that imposes on defendant the duties announced. To the contrary, such case law as exists suggests otherwise.
In Ziegelheim v. Apollo, 128 N.J. 250, 258, 607 A.2d 1298, 1301 (1992), the client brought a legal malpractice action against her divorce attorney based upon the attorney's advice that she enter into a settlement agreement ending the divorce litigation. The attorney's motion for summary judgment was granted, the court noting that the client had stated on the record in the divorce action that she thought the settlement agreement was "fair." Id. at 257-60, 607 A.2d at 1301-03. We affirmed the dismissal of all but one of the five counts of the malpractice complaint. Id. at 260, 607 A.2d at 1302.
The Supreme Court reversed, and remanded the matter for trial on all counts of the complaint. Id. at 260-67, 607 A.2d at 1302-06. The Court noted New Jersey's judicial policy encouraging settlements, but held that the policy did not stand as a barrier to legal malpractice actions based upon alleged attorney negligence involving such settlements. Id. at 263-65, 607 A.2d at 1303-05.
Nor did the client's statement on the record that the settlement agreement was fair preclude her later assertion of a legal malpractice claim. The Supreme Court stated that the "fact that a party received a settlement that was `fair and equitable' does not mean necessarily that the party's attorney was competent or that the party would not have received a more favorable settlement had the party's incompetent attorney been competent." Id. at 265, 607 A.2d at 1305.
Ziegelheim plainly allows a former client to bring a legal malpractice action against an attorney for professional negligence in divorce litigation where a settlement ensued. The client who settles an underlying divorce case is not precluded by reason of the settlement from filing a legal malpractice action against the attorney for professional negligence bearing *961 upon the settlement. No showing of fraud is required, id. at 262-64, 607 A.2d at 1303-05, and issue and claim preclusion principles do not apply simply because of the settlement, id. at 265, 607 A.2d at 1305. Thus, there is no basis in law for the Law Division judge's notion that defendant had an obligation not to enter into the second settlement agreement if she wished to pursue her malpractice claim based on the attorney's conduct earlier in the pendency of the matrimonial matter.
We are mindful, however, that, unlike the present case, Ziegelheim did not involve a second settlement ending the underlying divorce litigation. The precise question presented here is whether, during the course of her legal malpractice action, defendant had an "obligation" not to enter into the second settlement and, instead, await the Family Part judge's determination whether the first settlement was enforceable. We are likewise unaware of any basis for positing that obligation.
In Spaulding v. Hussain, 229 N.J.Super. 430, 551 A.2d 1022 (App.Div.1988), the plaintiff brought a personal injury action against a corporation for injuries he suffered while conducting business on the corporation's property. The defendant, who was the plaintiff's "primary" treating physician, agreed to testify, but subsequently failed to appear at trial. After concluding that it would be inappropriate and unfair to move for either a continuance or a mistrial, the plaintiff's attorney advised the plaintiff to accept the corporation's "inadequate settlement offer of $75,000" to end his personal injury litigation. The plaintiff acceded. Id. at 432-35, 551 A.2d at 1023-25.
Thereafter, the plaintiff brought a breach of contract and negligence action against the physician, seeking to recover as damages the amount that the plaintiff would have recovered from the corporation but for the physician's failure to testify. The physician asserted a "mitigation" or "comparative negligence" defense based on the proposition that the "plaintiff's loss of a full recovery from [the corporation] should have been mitigated by a motion for a mistrial which, if granted, would have preserved the [personal injury] claim intact." Id. at 435-36, 551 A.2d at 1024-25.
The jury returned a verdict finding that the plaintiff's total damages in the underlying personal injury action were $250,000, but that the plaintiff's negligence in incurring his injuries amounted to 35% of the total negligence. Consequently, the plaintiff's recovery was reduced by 35% to $162,500, from which the $75,000 settlement amount was deducted. Id. at 438-39, 551 A.2d at 1026-27.
The jury found a "causative breach of duty" on the physician's part, as well as "negligence" on the part of the plaintiff's attorney in settling the underlying personal injury action, allocating the total negligence between the physician and attorney at 55% and 45%, respectively. Id. at 439, 551 A.2d at 1027. The result was that the jury effectively determined that the plaintiff would have recovered $87,500 more than the $75,000 settlement amount in the underlying personal injury action if the physician had appeared to testify and if the plaintiff's attorney had not been negligent. Subsequently, the trial court granted the plaintiff's motion for judgment n.o.v., eliminating any allocation of negligence to the plaintiff based upon purported negligence on the part of his attorney. Id. at 439, 441-42, 551 A.2d at 1027, 1028-29.
The physician appealed and we affirmed on the substantive issues. Id. at 445, 551 A.2d at 1030. The physician had argued on appeal that the trial court erred in granting judgment n.o.v. eliminating any reduction of the plaintiff's recovery because *962 of his attorney's purported negligence. Id. at 441-43, 551 A.2d at 1027-29. We rejected this argument, stating:
We are also persuaded that as a matter of substance the trial judge was correct granting that relief. We have no doubt that the only basis in this record for a finding of plaintiff's negligence was the conduct of his attorney in opting to accept [the corporation's] settlement offer instead of moving for procedural reliefa mistrial or a continuance. The question then is whether there was any evidence in this record which could justify the finder of fact in concluding that that decision was negligent in that it constituted a breach of a duty which the attorney owed his client. Measured solely by what was best for his client under all the circumstancesand not by what was best for the non-appearing physicianwe think it beyond question, on this record, that [the plaintiff's attorney] exercised reasonable professional judgment in proceeding as he did.

[Id. at 442, 551 A.2d at 1029.]
We also rejected the physician's argument concerning the plaintiff's duty to mitigate damages. The essential contention was that the plaintiff was comparatively negligent in causing his damages because the trial court would have granted a mistrial or continuance if asked to do so, thus preserving the plaintiff's personal injury action. Id. at 443-44, 551 A.2d at 1029. We stated:
[A]s we view the matter, mitigation in this context is not conceptually different from defendant's claim of plaintiff's negligence. In both cases, the sole factual issue is whether [the plaintiff's attorney] acted in a professionally reasonable manner when he decided to opt for the [corporation's] settlement. In sum, defendant's nonappearance after he had promised to come, after the proofs had been taken out of order on his account, after trial had been continued for half a day on his account, and after his whereabouts could not be ascertained, threatened a litigation catastrophe to plaintiff and his attorney. They were obviously entitled to deal with that impending catastrophe in any reasonable manner which counsel, in his judgment and with plaintiff's concurrence, believed would best protect plaintiff'snot defendant'sinterests. There was no proof that the option chosen by plaintiff's attorney and agreed to by plaintiff, was not reasonable. Defendant was not entitled to anything more.

[Ibid.]
The situation facing defendant herein and her then-retained attorney as they appeared before the Family Part judge in the settlement enforcement phase of the divorce litigation resembles the situation that faced the plaintiff and his attorney in Spaulding. According to the counterclaim, plaintiff had negligently advised defendant in the divorce litigation, resulting in defendant's accession to some of the terms of an allegedly inadequate settlement with her husband and plaintiff's conduct in informing the court that the matter was settled even though defendant had not agreed to all the terms. Thereafter, defendant faced the prospect that the settlement might be enforced against her. That prospect became palpable when her successor attorney told her the matrimonial judge had manifested a tentative disposition to enforce the first settlement.
The Law Division judge was also incorrect in stating that the record contained nothing to suggest that the Family Part judge had indicated his inclination to hold the first settlement enforceable. Both plaintiff and her attorney at the time had averred under oath to that effect. In considering plaintiff's summary judgment motion *963 addressed to the malpractice counterclaim, the judge was required to consider the record in the light most favorable to defendant, the non-moving party. See Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146, 156 (1995). In failing to do so, the judge erred in her resolution of the summary judgment motion.
Moreover, defendant and her matrimonial attorney at the time of the settlement enforcement proceeding were faced with New Jersey's "longstanding policy that encourages settlements," Ziegelheim, supra, 128 N.J. at 263, 607 A.2d at 1304; see also Peskin v. Peskin, 271 N.J.Super. 261, 274, 638 A.2d 849, 856 (App.Div.), certif. denied, 137 N.J. 165, 644 A.2d 613 (1994), especially in the litigation of family matters. Davidson v. Davidson, 194 N.J.Super. 547, 550, 477 A.2d 423, 424 (Ch.Div.1984). Settlement agreements, even when not reduced to final written form, are enforceable in divorce litigation. See Bistricer v. Bistricer, 231 N.J.Super. 143, 144-45, 151, 555 A.2d 45, 46, 49 (Ch. Div.1987); Davidson, supra, 194 N.J.Super. at 550-54, 477 A.2d at 424-26; see also Harrington v. Harrington, 281 N.J.Super. 39, 41-42, 46-49, 656 A.2d 456, 457, 459-61 (App.Div.), certif. denied, 142 N.J. 455, 663 A.2d 1361 (1995).
There is a basis upon which the ultimate finder of fact in this matter might conclude that defendant's election to settle the matrimonial matterfor the second timein the enforcement proceeding was reasonable, especially considering the quality of plaintiff's earlier representation of her interests which might be found to have been wanting as a discharge of plaintiff's professional responsibilities. Defendant had arguably been placed in an untenable position in the enforcement proceeding by reason of plaintiff's conduct coupled with the policy favoring settlements. While perhaps not equivalent to the "litigation catastrophe" that faced the plaintiff in Spaulding, the situation was disadvantageous enough to warrant a possible finding ultimately that defendant's acceptance of the slightly more favorable second settlement was reasonable.
Like the plaintiff in Spaulding, defendant alleges that she was placed in a vulnerable position in the underlying litigation because of a professional's breach of duty. As in Spaulding, defendant was entitled to react to and deal with the result allegedly caused by plaintiff's actions "in any reasonable manner" which defendant and her attorney at the time concluded would protect defendant'snot plaintiff'sinterests. See Spaulding, supra, 229 N.J.Super. at 444, 551 A.2d at 1029. Defendant did so by agreeing to the second settlement, obtaining somewhat more than she would have received if the first settlement had been enforced. Plaintiff made no adequate showing on summary judgment that this course of action by defendant and her attorney at the time was unreasonable in the circumstances.
The Supreme Court in Ziegelheim recognized that an attorney may be sued for legal malpractice for his or her actions involving a settlement of matrimonial litigation. In Spaulding, we held that a party's resolution of underlying litigation by way of a settlement does not preclude a subsequent claim for professional negligence if the settlement was a reasonable reaction to the circumstances extant at the time. Thus, the Law Division judge here erred when she determined that defendant had an obligation, as a matter of law, to wait until the enforcement issue was decided rather than to end the divorce litigation by agreeing to the second settlement.
Another stated basis for the dismissal of defendant's counterclaim was the lack of proximate causation between plaintiff's actions *964 and defendant's damages. The Law Division judge reasoned that defendant could not prove damages that had been proximately caused by plaintiff's alleged professional negligence unless the assertedly unfair first settlement was enforced against her. Because defendant's entry into the second settlement made it unnecessary for the matrimonial judge to determine whether to enforce the first settlement, there was, according to the Law Division judge, "just no proximate cause" linking defendant's alleged damages arising out of the first settlement to plaintiff's actions in the divorce litigation.
According to the Law Division judge, because there was always a possibility that the Family Part judge might have found the first settlement to be unenforceable or unconscionable, defendant might not have been bound by it. The divorce action would have continued and defendant would have suffered no damages attributable to plaintiff's allegedly negligent actions involving the first settlement. The Law Division judge appears to have reasoned, based on the stated possibility, that defendant could not prove in the subsequent malpractice action that she had suffered any damages proximately caused by plaintiff's actions in the divorce litigation because the second settlement rendered moot the need to decide the enforceability of the first settlement.
This reasoning assumes that before defendant's legal malpractice claim would lie, she was required to risk the Family Part judge's decision on the enforcement issue. As we have already observed, the imposition of any such obligation on defendant runs afoul of the rationales of Ziegelheim and Spaulding. Moreover, the effects of plaintiff's conduct in respect of the first settlement might well have had an adverse impact upon defendant's position in negotiating the second settlement. Accordingly, we reject the Law Division judge's determination concerning proximate causation as conceptually flawed. That conclusion too broadly discounts the effects of plaintiff's alleged malpractice.
The judge's reasoning was flawed in another respect as well. As we have already concluded, the judge failed to consider the competent evidential materials presented "in the light most favorable to the nonmoving party," Brill, supra, 142 N.J. at 540, 666 A.2d at 156, and failed to give the non-moving party the benefit of all of the "legitimate inferences" flowing from that evidential material. R. 4:46-2(c). If the judge had accepted the thesis that defendant was moved to agree to the second settlement because of a reasonable belief that the Family Part judge was likely to enforce the first settlementan allegedly deficient product of plaintiff's errors or omissionsthe basis for the Law Division judge's "no proximate cause" determination would have evaporated.
Summary judgment must be granted where the evidence shows that there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Here, the grant of summary judgment to plaintiff was based upon flawed determinations of law and erroneous views of the impact of defendant's factual showings, that defendant had an obligation not to enter into the second settlement agreement and that defendant could not prove proximate causation regarding her damages. Therefore, the orders under review must be reversed.
The Law Division judge was also incorrect in determining that defendant's continued prosecution of her legal malpractice action against plaintiff would contravene *965 principles of judicial estoppel. Defendant's malpractice counsel had filed a certification in support of defendant's consented-to motion seeking to stay the legal fee and malpractice actions until the matrimonial enforcement motion was decided. In pertinent part, that certification represented:
To the extent that defendant should prevail in the proceedings presently pending [in the Family Part] concerning the effectiveness of the purported settlement, her counterclaim [for legal malpractice] will be rendered moot, inasmuch as the damage for which she seeks recovery in this action will not be visited upon her, as she will have a full and fair opportunity to litigate her matrimonial case and realize by way of settlement or judgment such recovery as she maintains she has been precluded from realizing by virtue of plaintiff's actions.
At the Law Division hearing on defendant's motion for reconsideration, the judge appears to have focused upon that representation as a basis for dismissing defendant's counterclaim. The judge stated:
[Y]ou filed a certification that was read into this record, which means much more than a letter by an attorney. And you made representations. And the representations are ... that if the case proceeds in the matrimonial case, it makes moot this one. That is a position taken. That is judicial estoppel.
In this ruling, the judge was also mistaken.
"The purpose of the judicial estoppel doctrine is to protect `the integrity of the judicial process.' " Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J.Super. 596, 606, 760 A.2d 794, 799 (App.Div.2000), certif. denied, 167 N.J. 88, 769 A.2d 1051 (2001) (quoting Cummings v. Bahr, 295 N.J.Super. 374, 387, 685 A.2d 60, 67 (App.Div.1996)). "A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding." Kimball, supra, 334 N.J.Super. at 606, 760 A.2d at 799. Judicial estoppel is an extraordinary remedy that should be invoked only when a party's assertion of a contrary position will result in a miscarriage of justice and only in those circumstances where invocation of the doctrine will serve its stated purpose, which is to protect the integrity of the judicial process. Ramer v. New Jersey Transit Bus Operations, Inc., 335 N.J.Super. 304, 313, 762 A.2d 297, 301 (App.Div.2000). See also Kimball, supra, 334 N.J.Super. at 608, 760 A.2d at 800. We discern four reasons why judicial estoppel was incorrectly invoked here.
First, although counsel who provided the critical certification represented defendant in her malpractice litigation, another attorney represented her in the matrimonial litigation. Defendant and her successor matrimonial attorney acknowledged that they had spoken with her malpractice counsel about the second settlement prior to defendant's entry into it. The record on appeal, however, is bereft of any basis for concluding that the malpractice attorney in any way influenced the decision of defendant and her matrimonial attorney to agree to the terms of the second settlement in the divorce litigation. Absent some palpable basis for finding that malpractice counsel had influenced the decision to end the divorce litigation via the second settlement, any conclusion that malpractice counsel misled the court *966 in his certification is groundless, eliminating one basis for invoking judicial estoppel.
Also, the certification was a document limited and qualified by its own language. The single, complex sentence emphasized by the Law Division judge was not a guarantee that defendant would prevail at the settlement enforcement hearing in the divorce litigation, thereby rendering her legal malpractice action moot. Instead, counsel merely stated in his certification that, if defendant "should prevail" at the settlement enforcement hearing, averting enforcement of the first settlement agreement, then her malpractice action would be rendered moot because the divorce litigation would continue. Arguably, defendant did not "prevail" in the settlement enforcement proceeding because, in her view, she was required to accept the second settlement, which was only slightly more beneficial to her than the first. The Law Division judge, however, appears to have misunderstood counsel's limiting conditional statements in his certification, and, instead, seems to have applied them as amounting to a guarantee that, if the stay were granted, then defendant's malpractice action would be rendered moot by any result other than enforcement of the first settlement. Given the plain and specific limiting conditional language of the disputed certification statement, there is no factual basis for that interpretation.
Further, in Kimball, supra, 334 N.J.Super. 596, 760 A.2d 794, we stated: "Because the doctrine of judicial estoppel only applies when a court has accepted a party's position, a party ordinarily is not barred from taking an inconsistent position in successive litigation if the first action was concluded by a settlement." 334 N.J.Super. at 607, 760 A.2d at 800. This is yet another reason why the disposition on judicial estoppel grounds was unwarranted.
Finally, the request for a stay of the action involving the fee and malpractice claims pending decision on the settlement enforcement motion was in keeping with Supreme Court precedent. In Grunwald v. Bronkesh, 131 N.J. 483, 621 A.2d 459 (1993), the Court indicated that such a stay in legal malpractice litigation is useful because it "prevents duplicative litigation and saves [the malpractice claimant] the discomfort of maintaining inconsistent positions." Id. at 499, 621 A.2d at 467.
For the foregoing reasons, the judge's invocation of judicial estoppel was error. The conditions warranting application of judicial estoppel, see Ramer, supra, 335 N.J.Super. at 314, 762 A.2d at 302; Kimball Int'l, Inc., supra, 334 N.J.Super. at 608, 760 A.2d at 800, did not exist here.
Reversed and remanded.