951 A.2d 1051 (2008)
401 N.J. Super. 467
Darren J. SCHULMAN and Allan Schulman, Plaintiffs-Appellants,
v.
WOLFF & SAMSON, PC, Nixon Peabody, LLP, Frank W. Ryan, Jr., and Paul M. Colwell, Defendants-Respondents.
No. A-4674-06T1
Superior Court of New Jersey, Appellate Division.
Argued April 2, 2008.
Decided July 21, 2008.
R. James Kravitz, Lawrenceville, argued the cause for appellants (Fox Rothschild, *1053 LLP, attorneys; Jonathan D. Weiner and Mr. Kravitz, on the brief).
Gage Andretta, West Orange, argued the cause for respondents Wolff & Samson, PC and Paul M. Colwell (Wolff & Samson, PC, attorneys; Mr. Andretta and Kiran V. Somashekara, on the brief).
Brian J. Molloy, Woodbridge, argued the cause for respondents Nixon Peabody, LLP and Frank W. Ryan, Jr. (Wilentz, Goldman & Spitzer, P.A., attorneys; Mr. Molloy, Willard C. Shih and Ruth A. Rauls, on the brief).
Before Judges PAYNE, SAPP-PETERSON and MESSANO.
The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiffs Darren J. Schulman and Allan Schulman appeal from two orders entered on April 11, 2007, that dismissed their complaint against defendants Wolff & Samson PC (Wolff Samson), Paul M. Colwell, Nixon Peabody LLP (Nixon Peabody), and Frank W. Ryan, Jr., with prejudice. Plaintiffs contend that the motion judge "afforded" the Supreme Court's holding in Puder v. Buechel, 183 N.J. 428, 874 A.2d 534 (2005), "a scope . . . it clearly does not merit," and, thus erred as a matter of law by concluding that their complaint against defendants was "preclude[d]" by plaintiffs' earlier settlement with other defendants in the consolidated litigation. We agree and therefore reverse the orders under review.

I.
We begin by setting forth the contorted procedural history leading to defendants' motions to dismiss, and to the extent necessary, provide a factual background to the dispute by relying upon the allegations contained in plaintiffs' complaints.
Plaintiff Allan Schulman founded Van Mar, Inc. (Van Mar), a ladies intimate apparel company, in 1980. During its effective business lifespan, the shareholders of Van Mar included Allan, who held fourteen percent of the stock, his younger son, plaintiff Darren J. Schulman, who held thirty-three and one-third percent of the stock, and Allan's estranged wife, Marilyn, his older son Scott, and his daughter Vanessa Nied who collectively owned the remaining fifty-two and two-thirds percent of the stock in Van Mar.[1]
In June 2005, Darren filed an action individually and on behalf of Van Mar naming Scott, Marilyn, Vanessa, and Elite Moulding and Design Center, Inc. (Elite), as defendants (the first action). Darren alleged breach of fiduciary duties by Marilyn, Vanessa and Scott in removing Darren and Allan from Van Mar's board of directors, breach of a certain shareholder agreement, and other claims of self-interested dealing by the defendants with Elite. Shortly thereafter, Marilyn filed for divorce from Allan, and shortly after that, Vanessa filed suit against Allan and Marilyn essentially claiming that her parents had violated an oral agreement to convey to her by inter vivos gift their respective shares of Van Mar stock (the gift action).
Leave was granted to amend the complaint in the first action to add Allan as a plaintiff, and in August 2006, plaintiffs sought leave to amend their complaint once again. In this proposed amendment, plaintiffs alleged that Scott, Marilyn, and Vanessa had surreptitiously created another corporate entity, 518 Apparel Group, Inc. (518 Apparel), and had improperly *1054 transferred Van Mar's assets and employees to this successor corporation. Although the motion to amend was denied, the judge permitted plaintiffs to file a separate lawsuit which contained these allegations (the second action).
In October 2006, plaintiffs filed a third complaint which is the subject of this appeal. While the underlying factual allegations involving Scott, Marilyn, Vanessa, Elite, and 518 Apparel were essentially restated in the new verified complaint, plaintiffs contended that Ryan, a partner at Nixon Peabody and a college friend of Darren's, had assisted the other defendants to breach their fiduciary obligations and commit the acts alleged in the first and second complaints. Plaintiffs also alleged that Ryan and Nixon Peabody had been paid for legal services that helped Scott, Marilyn, and Vanessa "develop and implement their scheme to defraud plaintiffs out of their interests in Van Mar." Plaintiffs also made various claims against Colwell and his firm, Wolff Samson, who were retained ostensibly by Van Mar to defend the corporation in relation to plaintiffs' first and second actions. Essentially, plaintiffs alleged that Colwell assisted Scott, Marilyn, and Vanessa, throughout the litigation in a manner that was in their own self-interests and inconsistent with the best interests of Van Mar.
In this third complaint, plaintiffs, individually and derivatively on behalf of Van Mar, alleged that defendants had 1) committed legal malpractice; 2) breached their contract to provide legal services to Van Mar; 3) breached their fiduciary duties to Van Mar and to plaintiffs; and 4) committed fraud. They sought compensatory and punitive damages, as well as any other necessary equitable relief.[2]
On February 28, 2007, the plaintiffs, Scott, Vanessa, and Marilyn entered into a global settlement that ended the divorce litigation, Vanessa's gift action, and plaintiffs' first and second actions. When the settlement was placed upon the record, all the individual parties in those suits were present and represented by counsel, however, Van Mar was not. Plaintiffs acknowledged that they believed the settlement was fair and reasonable, however they specifically preserved on the record their claims against these defendants, none of whom were present or otherwise participated in the settlement.
Immediately before the settlement was reached and prior to filing any answers, Ryan, Nixon Peabody, Colwell, and Wolff Samson all moved to dismiss plaintiffs' complaint. After the February 28, 2007, settlement was entered, defendants filed amended motions to dismiss in which they essentially alleged that plaintiffs' voluntary acceptance of and agreement to the terms of the global settlement precluded any further prosecution of the claims contained in their complaint against these defendants.
After oral argument on April 4, 2007, the motion judge issued a written decision that accompanied the orders under review. She began by noting that "[t]his is a legal malpractice action against two law firms that represented Van Mar," and further that "[t]he facts alleged in the legal malpractice complaint mirror the allegations in the companion shareholder oppression suit . . . and shareholder derivative suit. . . ." Noting that "[t]hese latter two actions . . . have now settled," the judge then recited at length several portions of plaintiffs' complaint that repeated verbatim the allegations contained in the complaints *1055 in the first and second actions. She concluded, "the wrongful conduct alleged in the shareholder litigation is substantially the same conduct that forms the basis of the legal malpractice complaint."
The judge noted the various legal issues presented by defendants' motions, but finding "these legal issues need not be explored," the judge determined "the motions [are] most simply resolved by the law set forth in Puder[ ]." After reviewing the Supreme Court's holding, the judge concluded that
The settlement in this case similarly precludes plaintiffs from pursuing a legal malpractice claim against the attorneys either derivatively or individually. The alleged malpractice arises from the same events alleged in the complaints that settled. When the settlement was placed on the record, plaintiffs represented to the court that it was fair and acceptable. They cannot now contradict that representation by saying in effect that the settlement was not enough, and they now should be able to pursue the attorneys in malpractice in order to obtain a further recovery for claims arising out of those same events. . . . [E]ven though the settling parties place on the record their intention to pursue the legal malpractice case, they still may not do so.
The judge entered the two orders under review dismissing plaintiffs' complaint with prejudice and this appeal ensued.

II.
On a motion to dismiss, the allegations in the complaint must be viewed with liberality and without concern for the plaintiff's ability to prove the facts alleged in the complaint. Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989). The plaintiff's obligation in order to defeat a motion to dismiss is "not to prove the case but only to make allegations, which, if proven, would constitute a valid cause of action." Leon v. Rite Aid Corp., 340 N.J.Super. 462, 472, 774 A.2d 674 (App.Div.2001). The motion "must be evaluated in light of the legal sufficiency of the facts alleged in the complaint." Donato v. Moldow, 374 N.J.Super. 475, 482, 865 A.2d 711 (App. Div.2005).
In this matter, defendants supported their motions with various exhibits, and plaintiffs did likewise in opposition to the motions. Pursuant to Rule 4:6-2, "[i]f, on a motion to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion." Because of the motion judge's reliance upon Puder, it would appear that only matter that she considered outside of the pleadings was the fact that the first and second actions had settled, and she did not rule as to the other legal arguments defendants raised.

A.
In Puder, the plaintiff attorney had represented defendant, the wife in a matrimonial action, and had negotiated a property settlement agreement on her behalf. 183 N.J. at 431-32, 874 A.2d 534. Defendant then consulted another attorney who advised her that the agreement was quite unfavorable, leading defendant to repudiate the settlement, discharge plaintiff, and hire new counsel. Id. at 432, 874 A.2d 534. The plaintiff brought suit to recoup her legal fees, and the defendant counterclaimed alleging plaintiff had committed legal malpractice by settling the case for inadequate terms. Ibid.
*1056 In the interim, the defendant's husband moved to enforce the terms of the settlement ostensibly reached in the underlying matrimonial matter. Ibid. During a plenary hearing to determine the enforceability of the original property settlement, defendant informed the court that certain modifications to the original settlement had been made, rendering the new settlement proposal acceptable. Id. at 433, 874 A.2d 534. Before the matrimonial judge, defendant indicated her knowing and voluntary agreement to the "acceptable" and "fair" terms of the new settlement, though she expressly reserved the right to continue her malpractice counterclaim against plaintiff. Id. at 434-35, 874 A.2d 534. The plaintiff's subsequent motion for summary judgment on the legal malpractice counterclaim was granted by the trial judge, but we reversed on appeal in a reported decision, Puder v. Buechel, 362 N.J.Super. 479, 484, 828 A.2d 957 (App.Div.2003).
Before the Supreme Court, both sides sought "to resolve th[e] matter on the basis of causation," Puder, supra, 183 N.J. at 437, 874 A.2d 534, with the plaintiff arguing that the defendant's subsequent agreement to voluntarily settle her matrimonial action cut off any proximately-caused injury from the alleged malpractice, and with the defendant arguing that she should be entitled to mitigate her damages caused by the malpractice by settling the case. Id. at 436-37, 874 A.2d 534; Ziegelheim v. Apollo, 128 N.J. 250, 265, 607 A.2d 1298 (1992).
However, the Court "instead, h[e]ld that fairness and the public policy favoring settlements dictate[d] that defendant is bound by her representation to the trial court that the divorce settlement agreement was `acceptable' and `fair.'" Puder, supra, 183 N.J. at 437, 874 A.2d 534. Harmonizing the case with its holding in Ziegelheim, the Court observed that "Ziegelheim's reasoning discourages malpractice litigation when a court finds that a plaintiff, although well aware that the attorney was negligent, nevertheless testifies under oath that the settlement was both acceptable and fair." Id. at 443, 874 A.2d 534. Since the defendant was fully aware of plaintiff's alleged negligence before entering into the final settlement, she was "bar[red][ ] from proceeding with her malpractice claim." Id. at 444, 874 A.2d 534.

B.
Plaintiffs argue that Puder does not control in this instance for three reasons. First, they contend that the motion judge "homogenized" their causes of action into one claim for legal malpractice and ignored the other aspects of their complaint to which Puder is inapplicable. Second, they argue that Ryan, who was not personally admitted to the practice of law in New Jersey, was not entitled to the deference Puder accords to New Jersey attorneys and is not immunized from claims that he improperly practiced law in New Jersey without a license. Third, they argue that Puder did not intend to immunize a lawyer who was "a joint tortfeasor" with other litigants in the case simply because a settlement was reached with that lawyer's co-defendants. Defendants argue that the motion judge correctly interpreted Puder to bar plaintiffs' claims based upon their voluntary entry into the global settlement which they admittedly characterized as fair and reasonable.
The holding in Puder is clearly limited by its terms to consideration of a litigant's subsequent ability to pursue a legal malpractice claim against her former attorney after having settled the case in which the former attorney provided representation. We find, therefore, no support for the proposition that Puder's rationale *1057 applies to any of plaintiffs' individual claims. It is undisputed that defendants did not represent Allan and Darren individually at any time, and plaintiffs did not allege that in their pleadings. In fact, in their initial motion to dismiss, defendants argued that they could not be culpable of professional malpractice precisely because they owed no duty to plaintiffs since they were not their clients.
We also conclude that plaintiffs' claims for breach of contract and fraud were improperly dismissed based upon an unwarranted expansion of Puder's rationale. The Supreme Court's holding only foreclosed the subsequent prosecution of a legal malpractice claim by a settling party against her attorney and did not address whether the same public policy considerations would foreclose a plaintiff from pursuing a different cause of action. We doubt, for example, that the Court would have barred the defendant in Puder from challenging the amount of the plaintiff's legal bill if it allegedly violated the terms of her retainer, or that it would have barred the defendant from asserting a claim against her former attorney alleging there was some fraudulent collusion between her counsel and the other side. These are essentially the claims these plaintiffs have made in their complaint.
We conclude that plaintiffs' claims for breach of contract and fraud were improperly dismissed based upon the motion judge's mistaken reliance upon Puder. We also conclude that Puder provides no basis for the dismissal of any of plaintiffs' individual claims against these defendants.

III.
We next consider whether plaintiffs' individual claims for legal malpractice and breach of fiduciary duty were properly dismissed for reasons other than those expressed by the motion judge, and whether plaintiffs' derivative claims for legal malpractice and breach of fiduciary duty were properly dismissed through application of Puder's rationale or for some other reason not expressed by the motion judge.

A.
Defendants argued that they could not be legally responsible to the plaintiffs individually on a theory of legal malpractice because they never represented them. Plaintiffs' counsel at oral argument before the motion judge summarized the individual legal malpractice claim as follows:
[T]he gravamen of the malpractice claim . . . was that the attorneys did not represent the best interest of Van [Mar]. . . . [I]f they had knowledge that the majority shareholders were acting improperly, they had a duty to bring that to the attention of all of the shareholders.
If they had knowledge that the majority shareholders were entering into self dealing transactions . . . they had a duty to bring that to the . . . shareholders. . . .
In other words, plaintiffs contended that defendants, though undisputedly Van Mar's counsel, also owed a duty to them as minority shareholders. Recognizing there was no New Jersey authority on the issue, and referencing out-of-state cases he deemed relevant and persuasive, plaintiffs' counsel posited the issue as "whether corporate counsel in a context of a closely held corporation owes a duty to the minority shareholders."
In their reply brief on appeal, plaintiffs note that resolution of this issue is unnecessary "because the claims at issue are derivative." We therefore decline the opportunity to directly address the question, one of first impression in New Jersey, and conclude that to the extent plaintiffs' complaint *1058 asserted individual legal malpractice claims against defendants, those claims are abandoned and dismissed with prejudice upon reinstatement of plaintiffs' complaint.
Similarly, we deem any claims plaintiffs make individually against defendants for the breach of a fiduciary duty to likewise be abandoned and they too are dismissed with prejudice when the complaint is reinstated. The essence of plaintiffs' breach of fiduciary duty claim is that defendants breached their fiduciary duties to Van Mar by aiding and assisting the majority shareholders, furthering their self-interests to the corporation's detriment. Such a claim is a derivative claim, not an individual claim made by a particular shareholder and based upon some particularized fiduciary obligation to that shareholder. See Brown v. Brown, 323 N.J.Super. 30, 36, 731 A.2d 1212 (App.Div.)(defining and distinguishing individual shareholder claims from derivative claims even in the context of a closely-held family corporation), certif. denied, 162 N.J. 199, 743 A.2d 851 (1999). Plaintiffs cite no New Jersey authority for the proposition that defendants owed a separate, independent fiduciary duty to them as individual minority shareholders, and we have found no such authority. Therefore, plaintiffs' individual claims against defendants for breach of any fiduciary duty are also dismissed with prejudice.

B.
We are left, therefore, to consider whether plaintiffs may continue to prosecute their derivative claims for legal malpractice or breach of fiduciary duty, or whether those claims are barred by application of Puder's rationale or on some other basis raised below, though not ruled upon by the judge. We are disadvantaged in attempting to consider the other arguments defendants raised because the record consists primarily of exhibits to the motions, many of which addressed the lack of any attorney-client relationship between plaintiffs and defendants or the settlement of the first and second actions, and the transcript of the proceedings, but not the briefs actually filed. R. 2:6-1(a)(2).
In her letter opinion, the motion judge noted that the "number of legal issues . . . raised" included "whether the complaint as drafted asserts shareholder derivative claims, whether a shareholder derivative legal malpractice [claim] can be maintained under New Jersey law, . . . and whether [ ] Nixon Peabody [ ] was improperly practicing law in New Jersey, and if so, did that conduct provide plaintiffs with a cause of action." While she declined to consider these alternative reasons for dismissal, relying instead solely on Puder, she dismissed plaintiffs' legal malpractice claims whether filed "derivatively or individually," a position expressly urged by Nixon Peabody's counsel at oral argument before the motion judge. We conclude that plaintiffs' derivative claims for legal malpractice and breach of fiduciary duty should not have been dismissed pursuant to the Court's holding in Puder, and we therefore reverse the orders under review in that respect.
"`[A] shareholder derivative action permits a shareholder to bring suit against wrongdoers on behalf of the corporation, and it forces those wrongdoers to compensate the corporation for the injury they have caused.'" In re PSE & G Shareholder Litigation, 173 N.J. 258, 277, 801 A.2d 295 (2002)(quoting Bradley T. Ferrell, Note, A Hybrid Approach: Integrating the Delaware and the ALI Approaches to Shareholder Derivative Litigation, 60 Ohio St. L.J. 241 (1999)). In the first and second actions that were settled, as well as in the complaint against these defendants, plaintiffs included both individual and derivative claims, i.e. claims brought on behalf *1059 of Van Mar. Therefore, it is defendants' argument, apparently accepted by the motion judge, that settlement of the first and second actions triggered the application of Puder because plaintiffs, as representatives of Van Mar, entered into a fair and reasonable settlement with Scott, Marilyn, and Vanessa, thus extinguishing any claim Van Mar may have had against these defendants.
However, we cannot accept the extension of Puder's rationale from that case's rather limited factual context to the complexities of this case. In Puder, the damages caused by the alleged inequities of the actual settlement were the crux of defendant's complaint against her former attorney. Having subsequently acknowledged the settlement was in fact fair and reasonable, public policy concerns compelled the dismissal of defendant's legal malpractice claim.
Here, however, plaintiffs do not contend that the derivative claims of damage to Van Mar that they seek to prosecute are a result of the inadequacies of the settlement that they reached with Scott, Marilyn, and Vanessa in the first and second action. Rather, they claim these defendants caused damage to Van Mar as a result of alleged legal malpractice and breach of fiduciary obligations that were independent of the settlement of those lawsuits, and certainly did not come about as a result of the settlement.[3] Plaintiffs' claims are that defendants' acted in concert with the settling defendants to cause Van Mar to suffer damage. As such, Puder is factually distinguishable and does not serve as a basis to dismiss plaintiffs' derivative claims.
In reversing the dismissal of plaintiffs' derivative claims for legal malpractice and breach of fiduciary duty, we do not reach any conclusion regarding the other arguments defendants may have raised below regarding these two claims because we cannot adequately consider those arguments based on the record as presented. We therefore do not foreclose defendant's ability to raise those other alternate theories for dismissal as they see fit, either by motions to dismiss or by motions for summary judgment, as appropriate. For example, we express no opinion as to "whether the complaint as drafted asserts shareholder derivative claims," see R. 4:32-3 (setting forth the requirements for such a pleading); or, "whether a shareholder derivative legal malpractice [claim] can be maintained under New Jersey law," see Cohen v. Southbridge Park, Inc., 369 N.J.Super. 156, 848 A.2d 781 (App.Div. 2004)(in which we considered outside counsel's claim for indemnification in connection with such a suit, but did not directly recognize the cause of action); or, "whether [ ] Nixon Peabody [ ] was improperly practicing law in New Jersey, and if so, did that conduct provide plaintiffs with a cause of action." See In re Jackman, 165 N.J. 580, 761 A.2d 1103 (2000)(citing cases in which the limited practice of law by out-of-state counsel on behalf of New Jersey clients was not deemed to be the unauthorized practice of law). We also note that the proper consideration of these issues might indeed require discovery or the development of a more substantial motion record in contrast to the rather insignificant record that currently exists.

*1060 IV.
In summary, we reverse the orders under review. We reinstate plaintiffs' complaint, specifically limiting the claims made for legal malpractice and breach of fiduciary duty to derivative shareholder causes of action. We hasten to add that in doing so, we are expressing no opinion about the relative merits of any of plaintiffs' individual or derivative claims. We remand the matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.
Reversed.
NOTES
[1] To avoid confusion, we shall refer to the various family members by their first names and we intend no disrespect by this informality.
[2] By order dated February 20, 2007, all three actions were consolidated for case management purposes only.
[3] We recognize that Colwell and Wolf & Samson claim that plaintiffs' allegations against them arise only in the context of their defense of Van Mar in the underlying actions actually filed by plaintiffs. However, plaintiffs apparently dispute this, and since the motion below was essentially decided on the pleadings and the global settlement entered, we believe that defendants' contention, although it may ultimately prevail down the road, cannot now serve as a reason to dismiss plaintiffs' complaint.