Cheney v. New England Newspapers, Inc., No. 509-10-12 Wmcv (Wesley, J. Feb. 26, 2014) (Cross-Motions for Summary Judgment).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**SUPERIOR COURT**

| | |
|---|---|
| **CHRISTINE CHENEY,** **Plaintiff** **v.** **NEW ENGLAND NEWSPAPER, INC.** **Defendant** | **WINDHAM UNIT, CIVIL DIVISION** **Docket No. 509-10-12 Wmcv** |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Christine Cheney was formerly employed by Defendant New England Newspaper ("the Publisher") in its advertising sales department. After a two-month medical leave for an injury unrelated to her work, Cheney returned to find that she had been replaced by two new hires, with her prior work assignments divided between them. Cheney was given a different work assignment in the advertising sales department, but she considered the offered position an unacceptable demotion and quit. She then brought this lawsuit, asserting four counts: (1) violation of the Vermont Parental and Family Leave Act (VtPFLA), 21 V.S.A. § 471; (2) violation of the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612; (3) wrongful discharge in violation of public policy; and (4) intentional infliction of emotional distress.

Currently before the Court are the Publisher's motion for summary judgment on all four counts, and Cheney's motion for partial summary judgment on her first two counts based on the state and federal statutes governing medical leave rights.[1] Viewing the evidence in a light favorable to the non-moving party on each motion, the Court concludes that there is a material issue in dispute regarding whether the position offered Cheney when she returned from her protected leave was equivalent to the position she had before she was injured. Thus, summary judgment cannot be granted to either party on the first two counts. The Court further concludes, however, that wrongful discharge in violation of public policy is not available as a matter of law where a statutory remedy is available, and that even viewing the evidence favorable to Cheney, the Publisher's behavior was not outrageous enough to support an intentional-infliction-of-emotional-distress claim as a matter of law. Accordingly, the Publisher's motion for summary

---

[1] Summary judgment is appropriate when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Madkour v. Zoltak,* 2007 VT 14, ¶ 12. For purposes of deciding these summary judgment motions, the Court views the evidence favorably to the non-moving party, giving it the benefit of all reasonable doubts or inferences. See *id.; Rappaport v. Banfield,* 2007 VT 25, ¶ 12.

judgment is **DENIED in part and GRANTED in part,** and Cheney's motion for partial summary judgment is **DENIED.**

*Background*

The following facts are undisputed, and provide a basic, general background. Other facts will be presented in the context of the discussion of the issues below, based on the evidence viewed favorably to the non-moving party on whichever motion is being discussed.

Cheney, an employee eligible for protected leave under both the federal FMLA and the VtPFLA, seriously injured her hip and ankle in a non-work related fall in an icy parking lot in mid-January 2011.

Cheney had worked as an advertising sales representative for the Publisher since May 2004, with the exception of about nine months in 2009. For most of her time as an advertising sales representative, Cheney sold advertising in the Town Crier or Brattleboro Reformer publications. Like almost all of the Publisher's salespeople, she was assigned a particular territory and would spend most of the day outside the office, driving around and visiting customers and potential customers in her assigned territory to sell advertising space. Sometime between November 2010 and her fall in mid-January 2011, however, Cheney stopped having an assigned territory and stopped selling advertising space in the Town Crier or Reformer. Instead, Cheney started selling advertising space in Publisher's Parts Finder, a publication devoted to automobiles and auto parts; and this sales position was unique in that it allowed her to primarily stay in the office and make sales calls by phone. At the same time, she started selling advertising on "niche" products, which are non-newspaper items such as restaurant placemats. Like the Parts Finder sales, and unlike the sales of ads for the Town Crier or Reformer that Cheney had been doing previously, her "niche" sales were not limited to customers in a particular geographic area.

It is undisputed that Cheney was eligible for protected leave and provided the necessary notification and documentation to make her medical leave protected. Nonetheless, when Cheney returned from her medical leave after approximately eight weeks, she found that she had been replaced. Cheney was not reinstated in her prior position of selling ads in the Parts Finder and on "niche" products, but was instead offered a position like she had previously held, selling advertising in the Reformer. Her salary, benefits, and commission structure would be the same as prior to her leave, but she would go back to having her potential customers limited to a particular geographic area, and her sales calls would be made primarily outside rather than inside the office. Cheney asserted her right to reinstatement in her pre-leave position. When she was told that she should get to work in the newly offered outside sales position or go home, she quit.

*Cross-Motions for Summary Judgment on the Statutory Claims, Counts 1& 2*

Under both the federal FMLA (29 U.S.C.A. § 2601 et al.) and the Vermont PFLA (21 V.S.A. § 470 et al.), a covered employer is required to allow an eligible employee to take up to twelve weeks of unpaid medical leave without fear of losing their job. When the employee returns from the unpaid leave, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C.A. § 2614(a)(1). See also 21 V.S.A. § 472(f) (returning employee must be offered the same or "comparable job at the same level of compensation, employment benefits, seniority or any other term or condition of the employment existing on the day leave began.")

It is undisputed that the Publisher was a covered employer, that Cheney was an eligible employee, and that Cheney was entitled to protected medical leave of up to twelve weeks. It is further undisputed that when she returned after eight weeks she had been replaced and was offered a different job. The pivotal issue here, then, is whether the job the Publisher offered Cheney when she returned was equivalent and comparable to the job she had when she went out on protected leave.[2]

In analyzing this issue, the Court looks for guidance to the federal regulations on what is an equivalent position: 29 C.F.R. § 825.215. "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). With respect to the requirement that the equivalent position have substantially similar duties, conditions, responsibilities, privileges and status, the regulations state that the employee "must be reinstated to the same or a geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance)," § 825.215(e)(1); that the employee must have the same or an equivalent opportunity for bonuses, § 825.215(e)(3); and that "an employee cannot be induced by the employer to accept a different position against the employee's wishes," 29 C.F.R. § 825.215(e)(4). The apparent strictness of these provisions is somewhat mitigated by 29 C.F.R. § 825.215(f), however, which provides for a *de minimis* exception: "The requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions of employment does not extend to *de minimis,* intangible, or unmeasurable aspects of the job."

*The Publisher's Motion*

In its motion for summary judgment, the Publisher points out that Cheney's pre-leave job and the job she was offered on her return have the same pay, benefits, and commission structure, and argues that any differences between the two jobs must be considered *de minimis* as a matter of law.

---

[2] The parties treat the federal equivalency analysis and the state comparability analysis the same, and the Court will also.

3

For purposes of the Publisher's motion the Court views disputed facts favorably to Cheney. Viewed in this manner, the evidence shows that Cheney went from being primarily an "inside" salesperson with a three-desk work space and sales potential not limited by geographic territory to being primarily an "outside" salesperson who would spend her days out of the office, on the road, making sales calls on potential customers in a limited, assigned geographic territory. Additionally, there is evidence that before her leave Cheney was a supervisor with respect to the several other salespeople selling advertising on "niche" products. She did not manage the other "niche" salespeople in terms of hiring, firing, granting leave, etc.; but she was the senior person, providing guidance and ideas for how to approach and achieve their goals, and as such, she was in a position to potentially earn bonuses if those "niche" sales goals were met. She also had a business card, provided by the Publisher, stating her position as "Niche Supervisor." In the Court's view, the change from inside sales unlimited by geographic territory to outside sales limited by geographic territory, coupled with the loss of supervisory title, status, and concomitant bonus potential, cannot be deemed *de minimus* as a matter of law.

The Publisher cites a number of cases in which courts have ruled that various differences in jobs were *de minimus* as a matter of law, and have thus granted (or affirmed grants of) summary judgment for defendants in FMLA failure-to-reinstate cases. See, e.g., *Breeden v. Novartis Pharmaceuticals Corp.,* 646 F.3d 43 (D.C.Cir. 2011) (where new sales position has same title and duties, but different territory and accounts, difference is *de minimus* as matter of law); *Smith v. East Baton Rouge Parish School Board,* 453 F.3d 650 (5th Cir. 2006) (where new school auditor position performed same auditing functions, but as result of reorganization, performed them in central office rather than in the various schools being audited, difference is *de minimus* as matter of law); *Mitchell v. Dutchmen Manufacturing, Inc.,* 389 F. 3d 746 (7th Cir. 2004) (where new assembly line position had primarily the same duties and tasks as the old, but required employee to spend a relatively small amount of her time performing new tasks that involved the use of small hand tools but were not overly time consuming or physically demanding, difference is *de minimus* as matter of law); *Hillstrom v. Best Western TLC Hotel,* 265 F.Supp.2d 117 (D. Mass. 2003) (where hotel rooms manager performed same duties but, as result of addition of new level of management above him, he lost his private office, had his title changed to more accurately reflect what he actually did, and no longer reported directly to owner, difference is *de minimus* as matter of law). None of these differences approach the extent of the differences here, however, and the Court does not find them persuasive.

As the Publisher points out, the protected medical leave acts were not intended to provide the employee with any right, benefit or position the employee would not have been entitled to if the employee had not taken the leave. See 29 U.S.C.A. § 2614(a)(3)(B); 21 V.S.A. § 472(f) & (f)(1). This means that if the employee's position would have been eliminated or modified during the employee's leave due to reorganization, consolidation, reduction in force, or some other business reason whether or not the employee was out on leave, she has no greater rights than she would have had she not been out on leave. That is not what happened here, however. Rather, the

4

Publisher has conceded that it did not eliminate Cheney's job for reasons unrelated to her leave, but instead replaced her because she was out on leave.

Cheney was entitled to reinstatement in her prior position or an equivalent one, and there is at least a genuine issue of material fact regarding whether the position offered Cheney was equivalent to the one she had before she went out on protected leave. Accordingly, the Publisher's motion for summary judgment on the statutory counts must be denied.

Cheney's Motion

For purposes of Cheney's motion for partial summary judgment on the statutory counts, the Court views the evidence favorably to the Publisher. Since the Publisher has presented testimony that Cheney never actually had the status, title, or bonus potential of a supervisor, the asserted difference based on the loss of that status, title, and bonus potential drops out of the analysis. Thus, the Court considers whether the undisputed change from inside sales without geographic limitation to outside sales limited to a particular geographic territory is alone enough to make the positions not equivalent as a matter of law. The regulations state that an equivalent position cannot require a significant increase in commuting time or distance, see 29 C.F.R. § 825.215(e)(1). This is not exactly the same as an increase in driving time and distance while performing the necessary job tasks, but it does suggest that the necessity to spend more time in the car is a valid consideration weighing in Cheney's favor.

The question of Cheney's entitlement to summary judgment on her statutory claims is close. However, there is no case law directly addressing the difference between inside and outside sales; and in the absence of regulatory or case law directly on point, the evaluation of equivalence of inside and outside sales jobs should be based on a factual comparison of the day-to-day duties and tasks the jobs involve. This is not, of course, an evaluation the Court is in a position to make on summary judgment. Accordingly, Cheney's motion for partial summary judgment on the statutory counts will also be denied.[3]

*The Publisher's Motion for Summary Judgment on the Public Policy Claim – Count 3*

The Publisher argues that Cheney's claim for wrongful termination in violation of public policy is precluded because the FMLA and the VtPFLA provide their own remedies as part of a comprehensive statutory scheme. The Court agrees, as do the vast

---

[3] The Court notes that Cheney has filed a motion in limine for the admission of a report from a U.S. Dept. of Labor investigator finding that the positions were not equivalent because of the switch to primarily outside sales, and that the Publisher had violated the FMLA as a result. The motion in limine is addressed in a separate order, issued contemporaneously. In deciding these cross-motions for summary judgment, the Court has not considered this report; even if the report is eventually found admissible, upon proper authentication, the investigator's finding of lack of equivalence would not be binding. Thus, while it might strengthen Cheney's case, it could not negate the existence of a genuine issue of material fact regarding whether the jobs were equivalent.

majority of courts that have addressed this question. See, e.g., *Crevier v. Town of Spencer,* 600 F. Supp.2d 242, 265 (D. Mass. 2008); *Lucht v. Encompass Corp.,* 491 F.Supp.2d 856, 866-67 (S.D. Iowa 2007); *Perez v. Hospitality Ventures-Denver LLC,* 298 F.Supp.2d 1110 (D. Colo. 2004); *McClain v. Southwest Steel Co., Inc.,* 940 F.Supp. 295, 298 (N.D. Ok. 1996); *Gall v. Quaker City Castings,* 874 F. Supp. 161 (N.D. Ohio 1995) (all holding that availability of statutory remedies under FMLA precludes cause of action for wrongful discharge based on violation of public policy based on same alleged misconduct).

The purpose of the FMLA is to balance the demands of the workplace with the needs of workers and their families, by entitling employees to take reasonable leave for medical reasons in a manner that accommodates the legitimate interests of employers. 29 U.S.C.A. § 2601(b)(1),(2),&(3). The Act does this by, among other things, entitling eligible employees of covered employers to take medical leave of up to twelve weeks and be reinstated upon their return, to the same or an equivalent position. 29 U.S.C.A. § 2614 (establishing the right to leave and reinstatement) & 2615 (making it unlawful for employer to deny or interfere with that right). Moreover, the Act specifies the remedy if the employer interferes with or violates the employee's rights under the Act: the wronged employee may bring a civil action for wages, salary, benefits, or other compensation lost to the employee by reason of the violation and interest. 29 U.S.C.A. § 2617(a)(1)(A)(i)&(ii). Additionally, the amount awarded will generally include a further amount of liquidated damages equal to the lost wages, salary, benefits, and other compensation plus interest (i.e., double damages), unless the employer proves to the satisfaction of the court that the violation was in good faith and the employer had reasonable grounds for believing it was not violating the Act. *Id.* at §2617(a)(1)(A)(iii).

The public policy Cheney relies on is the same public policy underlying the FMLA; and because that Act provides its own remedy, allowing a wrongful discharge claim to vindicate that policy is unnecessary. At best allowing such an action would be duplicative, and at worst it could upset the delicate balance between employee rights and employer needs that the lawmakers shaping the policy were trying to achieve.

The Vermont statutory scheme is similarly detailed with respect to purpose, right to reinstatement, and remedy, so a similar reasoning and conclusion applies. Moreover, the remedies secion of the VtPFLA (21 V.S.A. § 474) adopts and incorporates the remedies section of the Vermont Fair Employment Practices Act (VtFEPA)(21 V.S.A. § 495b); and while no Vermont court has addressed whether the FMLA or VtPFLA preempt wrongful discharge in violation of public policy claims based on the same alleged misconduct, the federal District Court in Vermont has held that a plaintiff's common law discrimination claim based on the same employer misconduct as his FEPA claim was preempted. See *Violette v. IBM Corp.,* 962 F.Supp. 446, 449-50 (D.Vt. 1996), citing *Winney v. Ransom & Hastings, Inc.,* 149 Vt. 213, 214 (1988) ("Where a statute confers a remedy unknown to common law, and prescribes the mode of enforcing it, that mode alone can be resorted to.") Like the plaintiff's right to be free from discrimination in *Violette,* an employee's right to take medical leave and be reinstated after that leave

did not exist until created by statute, and the remedy provided by the statute is the exclusive remedy for violation of that right.

The Publisher's motion for summary judgment on Count 3 will therefore be granted.[4]

*The Publisher's Motion for Summary Judgment on the Emotional Distress Claim – Ct 4*

Lastly, the Publisher moves for summary judgment on Cheney's claim for intentional infliction of emotional distress (IIED), arguing that even viewing evidence favorably to Cheney, there is no evidence of any conduct on its part that would be outrageous enough to support such a claim.

To establish a claim for IIED, a plaintiff must show, among other things, that the defendant engaged in extreme and outrageous conduct. *Dalude v. Fletcher Allen Health Care, Inc.,* 174 Vt. 74, 83 (2002). This is not an easy thing to show, as the defendant's conduct "must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Id.*, citing *Denton v. Chittenden Bank,* 163 Vt. 62, 66 (1994). See also *Restatement (Second) of Torts* § 46, cmt.d (1965).

Viewed favorably to Cheney, the evidence here shows that the Publisher replaced Cheney with two new hires several weeks into her protected medical leave, even though it knew she was expected to return in less than twelve weeks. The Publisher did not inform Cheney of her replacement, however, so she discovered it only by walking to her work station and finding the replacements doing her job there. Then, when Cheney objected to her reassignment and cited her legal rights, the Publisher rudely screamed at her and sarcastically mocked her legal rights, saying it could simply give her back her old job and then transfer her five minutes later, implying "so what's the difference." The Publisher then refused to discuss it further, telling Cheney to "get to work" in her reassigned position or go home.

The alleged behavior of the Publisher was thoughtless, rude, and shows a fundamental misunderstanding of an employee's right to protected medical leave.[5] However, the Court concludes as a matter of law that it does not rise to the level of extreme outrageousness necessary to provide the basis for an IIED claim. Thus, the Publisher's motion for summary judgment on this claim will also be granted.

---

[4] The Publisher also argued that there can be no wrongful discharge as a matter of law because it did not discharge Cheney; she quit. Because of the Court's conclusion on the preemption question, it need not address this argument. Instead, for purposes of this motion, the Court has assumed that where an employer fails to reinstate and instead offers the employee a less desirable position, causing her to quit, this failure to reinstate can be considered a discharge.

[5] While it is true that as a general matter the Publisher could have transferred Cheney from one position to another for almost any reason or no reason at all, at any time, such a transfer would still have been a violation of the FMLA and VtPFLA if there was a causal connection between the transfer and her leave.

**ORDER**

Cheney's motion for partial summary judgment on Counts 1 and 2 is **DENIED.**
The Publisher's motion for summary judgment is **DENIED** with respect to Counts 1 and 2, and **GRANTED** with respect to Counts 3 and 4.


Dated and signed electronically at Newfane, Vermont, this 26th day of February, 2014.


_John P. Wesley_

_____
John P. Wesley
Superior Court Judge